UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **DONNA SCHMITT,** on behalf of herself and others similarly situated,<br><br>**Plaintiffs,**<br><br>v.<br><br>**SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.,** a Tennessee for Profit Corporation,<br><br>**Defendant.** | **Case No.: 2:24-CV-2188-SHL-tmp**<br><br>**FLSA COLLECTIVE ACTION** |

**JOINT MOTION AND INCORPORATED MEMORANDUM OF LAW FOR APPROVAL OF FAIR LABOR STANDARDS ACT COLLECTIVE ACTION SETTLEMENT**

COMES NOW, Plaintiff Donna Schmitt ("Schmitt" or "Representative Plaintiff"), individually on behalf of herself and all Opt-In Plaintiffs (collectively, the Representative Plaintiff and the Opt-In Plaintiffs are referred to herein as the "Plaintiffs"), together with Sedgwick Claims Management Services, Inc. ("Sedgwick") (together, Plaintiffs and Sedgwick are referred to as the "Parties") hereby move this Court for approval of the Fair Labor Standards Act Collective Action Settlement ("Settlement Agreement" or "Settlement") between Plaintiffs and Sedgwick, which is attached hereto as Exhibit 1.

I.   **BACKGROUND**.

On March 22, 2024, Schmitt, on behalf of herself and all similarly situated employees of Sedgwick, commenced this action for recovery of unpaid overtime compensation under the

1

Fair Labor Standards Act of 1928, 29 U.S.C. section 201, *et seq*. ("FLSA"). (ECF No. 1.) In her complaint, Schmitt alleged she was employed by Sedgwick as a Performance Assurance Analyst ("PAA") and was misclassified as a salaried exempt employee. (ECF No. 1 at ¶¶ 10, 12, 25.) Schmitt further alleged that other individuals employed by Sedgwick as PAAs were similarly misclassified as salaried exempt employees, and that Plaintiff and the other PAAs were owed unpaid overtime compensation for all hours they worked in excess of forty (40) hours a week. (ECF No. 1 at ¶¶ 13-15, 21-26.)

On November 5, 2024, Plaintiff filed an unopposed Motion for Leave to File Amended Complaint. (ECF 33.) Plaintiff's unopposed Motion for Leave was granted on November 6, 2024. (ECF 34.) On November 6, 2024, Plaintiff filed her First Amended Complaint. (ECF 35.) Plaintiff's First Amended Complaint did not materially alter her allegations and merely clarified that the putative FLSA Collective Plaintiff sought to represent was limited to "individuals who work(ed) for Sedgwick and held the position of Performance Assurance Analysts during the time period from May 1, 2021 through May 1, 2024." (ECF 35 at ¶14.)

Also on November 5, 2024, the Parties jointly moved the Court for an order approving the Parties' draft notice to the putative FLSA Collective, appointing Plaintiff as Representative of the putative FLSA collective, and approving issuance of the court-authorized notice to the putative FLSA collective under Section 216(b). (ECF 32.) The Parties joint motion was granted on November 8, 2024. (ECF 36.) On November 19, 2024, the court-authorized notice was mailed to all one hundred ten (110) individuals in the putative FLSA Collective, as defined in Plaintiff's First Amended Complaint. Of those, a total of sixteen (16) Opt-In Plaintiffs, including Schmitt, joined this action. (ECF Nos. 2, 14, 15, 17, 39-49, 52.)

Pursuant to each of their individually executed Consent to Join forms, all Opt-In Plaintiffs agreed and consented to (1) being a Plaintiff in this FLSA case, (2) being bound by

any judgment by the Court or any settlement of this action, (3) Plaintiff Schmitt being their representative, and (4) Lytle & Barszcz being their counsel in this action. (*Id*.)

## II.   SETTLEMENT.

On October 14, 2024, the Parties participated in a private mediation session with Carl Jacobson, Esq. (ECF No. 31.) Although the Parties did not reach a resolution at the time, the discussions were productive and fostered the Parties' agreement to facilitate notice to the putative FLSA Collective. On April 30, 2025, the Parties participated in a second day of mediation with Carl Jacobson, Esq. and a settlement was reached. (ECF No. 58.).

Given Sedgwick and Plaintiffs have successfully come to an agreement to resolve this case, they now seek approval of the settlement from the Court. A copy of the Settlement Agreement between the Parties is attached hereto as Exhibit 1. Attached to the Settlement Agreement are three different exhibits: Exhibit A is a Notice of Settlement of Lawsuit, which will notify the Plaintiffs of the settlement of this lawsuit and their rights thereunder; Exhibit B is the breakdown of the amounts to be paid to the Plaintiffs (which will be split 50% to wages and 50% to liquidated damages); and Exhibit C is the Release of Claims form that Plaintiffs will be required to sign to receive payment under the Settlement Agreement.

The settlement provides that Sedgwick will pay up to the total amount of Five Hundred Thousand Dollars ($500,000.00) as follows: (1) Three Hundred Sixty-Seven Thousand Five Hundred Dollars ($367,500) will be distributed to the Representative Plaintiff and the Opt-In Plaintiffs[1] as detailed in Exhibit B, (2) a Service Award of up to Seven Thousand Five Hundred Dollars ($7,500) payable to the Representative Plaintiff, and (3) up to One Hundred and Twenty Five Thousand Dollars ($125,000) payable to Lytle & Barszcz's fees and expenses. (Ex. 1 at ¶1.11.)

---

[1] Sedgwick is under no obligation to pay amounts allocated to Plaintiffs who do not timely return executed release forms.

After approval of the Settlement is granted, and the Parties agree upon the contents of the forms to be mailed to Plaintiffs, Plaintiffs' Counsel shall send via U.S. mail, or via email to those for whom email addresses are known, a package personalized for each Plaintiff containing the Notice of Settlement Form, the Release of Claims form, and a postage-paid, pre-addressed envelope that each Plaintiff can use to return the Release of Claims form to Plaintiffs' Counsel. (Ex. 1 at ¶5.3). Plaintiffs' Counsel will appropriately handle any re-mailings, as needed, and will provide weekly updates to Sedgwick's Counsel regarding same. (*Id*. at ¶5.4-5.5.)

Plaintiffs must complete and return to Plaintiffs' Counsel their executed Release of Claims form on or before forty (40) days after the date the Notice of Settlement and Release of Claims form was sent to them. (Ex. 1 at ¶5.6.) Plaintiffs who return their executed Release of Claims Form agree to release Sedgwick from any claim, cause of action, or demand under the FLSA for unpaid overtime wages, including liquidated damages, interest, attorney's fees, or litigation expenses while they were employed as a salaried exempt Performance Assurance Analyst during the period of time from three years prior to their Opt-In/Consent to Join being filed with this Court through May 1, 2024, or, if they left the Performance Assurance Analyst position prior to May 1, 2024, the date they were no longer a salaried exempt Performance Assurance Analyst. (*Id*. at ¶1.13.) Plaintiffs who do not return release forms will not be issued a payment and none of their claims against Sedgwick shall be released. (*Id*. at ¶5.8.)

Pursuant to the Settlement Agreement, Sedgwick retains the right to nullify the Agreement if either (1) the Representative Plaintiff fails to timely sign and return the Release Form or (2) if Opt-In Plaintiffs representing fifty percent (50%) or more of the Payment Amount fail to timely sign and return Release of Claims forms. (Ex. 1 at ¶4.4.) In the event Sedgwick nullifies the Agreement due to participation, it is agreed in the Settlement Agreement that the Parties will return to their same positions in the lawsuit without prejudice to either

4

party. Hence, as requested herein, the Parties ask that the Court retain jurisdiction for the time period of compliance in the Settlement Agreement. The Parties agree to immediately notify the Court once all necessary conditions are met by filing a Joint Motion for Dismissal with Prejudice as described herein.

Sedgwick and Plaintiffs agree this is a fair and reasonable settlement of a bona fide dispute as to Plaintiffs' overtime claims under the FLSA while they were employed as salaried exempt Performance Assurance Analysts up through the date they were no longer in one of these salaried exempt positions, or until May 1, 2024.

Upon finding that the Settlement Agreement is fair and reasonable, the Parties request that the Court issue an Order dismissing the case without prejudice and retaining jurisdiction for entry of a final order of dismissal, with prejudice. Upon completion of the payment provisions of the settlement, the Parties will file a Joint Motion for Dismissal, with prejudice. As such, the Parties are requesting the Court retain jurisdiction for a limited time period.

### III.   MEMORANDUM OF LAW

#### A.   Standard of Review.

When approving a settlement for back wages under the FLSA, "the court must review the proposed settlement to ensure that it is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *O'Bryant v. ABC Phones of N. Carolina, Inc.*, No. 19-CV-02378-SHM-TMP, 2020 WL 7634780, at *18 (W.D. Tenn. Dec. 22, 2020), *quoting Lynn's Food Stores, Inc. v. United States*, 679 F. 2d 1350, 1355 (11th Cir. 1982) (internal citation omitted). The Sixth Circuit has not directly stated the factors courts must consider when deciding whether an FLSA collective action settlement is fair and reasonable, however, it has stated that the following factors guide the inquiry: (1) the risk of fraud or collusion, (2) the complexity, expense and likely duration of the litigation, (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits, (5) the opinions of class counsel

and class representatives, (6) the reaction of absent class members, and (7) the public interest. *Id.* at *7 (*citing Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp. ("UAW")*, 497 F.3d 615, 631 (6th Cir. 2007).

### B.     The Proposed Settlement Agreement.

In this case, Plaintiffs asserted claims for unpaid overtime under the FLSA for the time period during which they were employed as salaried exempt Performance Assurance Analysts for Sedgwick. Sedgwick contends that Plaintiffs were employed in a bona fide administrative capacity and properly classified as exempt employees under the FLSA pursuant to 29 U.S.C. § 213(a)(1) and 29 C.F.R. § 541.200, *et seq.* and, therefore, were fully compensated for all hours they worked. Plaintiffs strongly dispute Sedgwick's contentions. As such, there is a bona fide dispute between the Parties as to whether Plaintiffs worked any overtime hours, whether the Administrative Exemption applies to Plaintiffs and whether Plaintiffs are owed any unpaid overtime wages.

During the relevant time period, Plaintiffs were not required to track the number of hours they worked, nor did Sedgwick track their hours with a timekeeping system. Accordingly, Plaintiffs had to estimate the number of hours they worked during their employment while relying on their memories and inferences drawn from data sources produced by Sedgwick. Such sources included electronic activity logs for Sedgwick's email, and computer systems. In preparation for their two mediation sessions in this matter, the Parties spent numerous hours analyzing data produced by Sedgwick to estimate each Plaintiff's total working hours day by day and week by week. However, the Parties estimates of the total working time for the Plaintiffs did not align. Plaintiffs' estimates asserted that they were working substantial overtime hours throughout the relevant time period, whereas Sedgwick's estimates were substantially lower and often showed the Plaintiffs were working less than 40 hours in a week. As such, there was a clear dispute between the Parties concerning not only

6

the propriety of the PAAs' exempt classification, but also their estimated number of hours worked and, thus, the amount of their theoretical recovery.

Sedgwick further asserted that even if Plaintiffs were improperly classified as exempt, Plaintiffs would not be entitled to the time and a half rate for purpose of calculating any unpaid overtime wages because Plaintiffs were already paid their straight time, or alternatively, that the fluctuating workweek applies because the Parties had a clear and mutual understanding that Plaintiffs' salaries were intended to compensate them for all hours worked. As such, Sedgwick believes that any unpaid overtime wages must instead be paid out at the half-time rate. Plaintiffs strongly dispute this claim and believe the time and a half rate would apply.

The Parties also disagreed over Plaintiffs' entitlement to liquidated damages, as well as the application of a two or three-year statute of limitations under the FLSA, insofar as Sedgwick contends it had reasonable grounds to believe the PAA position was properly classified and did not willfully misclassify the Plaintiffs. Plaintiffs, again, disagreed with Sedgwick's contentions.

Despite their clear disagreements on the facts and applicable legal standards, Plaintiffs and Sedgwick spent numerous hours coming to a fair and equitable settlement that considered the large divide between their respective positions and each Parties' likelihood of success on the merits. Indeed, only after carefully and thoroughly considering all available information and the strengths of their respective positions, Sedgwick and Plaintiffs utilized their respective analyses to come to an agreeable gross settlement amount that reflects a fair and reasonable compromise.

As part of this fair and reasonable compromise, Plaintiffs' Counsel developed a formula to calculate an equitable pro-rata distribution of the settlement proceeds amongst the Plaintiffs. This formula took into account the following factors: (i) the number of weeks a Plaintiff worked in the PAA position during the relevant time period; (ii) when a Plaintiff opted into the

lawsuit; (iii) Plaintiffs' rate of pay; (iv) the estimate of hours a Plaintiff worked in any given work week based upon Sedgwick's computer log on and off records; (v) whether Plaintiffs were parties to, and received payments from, prior settlements with Sedgwick; and, (vi) other factors related to the legal risks associated with continued litigation and trial. The amounts paid to each Plaintiff pursuant to the pro-rata distribution is reflected in Exhibit B to the Settlement Agreement. Pursuant to the Settlement Agreement, the payment amounts Plaintiffs will receive, if they sign and return releases, range in value from $4,161.65 to $46,155.58.

Additionally, the Parties negotiated a Service Award of up to Seven Thousand Five Hundred Dollars ($7,500) payable to the Representative Plaintiff. Plaintiff Schmitt has been involved in this litigation and assisted Plaintiffs' Counsel in analyzing the computer log on and off data, working with Plaintiffs' Counsel on discovery issues and participating in mediation. Her assistance, time, and effort were essential in resolving this case in such a way that is fair and equitable to the Opt-In Plaintiffs. Courts in this Circuit have found $7,500 service awards to Representative Plaintiffs reasonable. *O'Neil v. Pipeline*, 2021 U.S. Dist. LEXIS 225409 (S.D. Ohio Nov. 2, 2021) ($7,500 service award to Representative Plaintiff reasonable); *Myres v. Hopebridge, LLC.*, 2023 U.S. Dist. LEXIS 41294 (S.D. Ohio Feb. 21, 2023) ($7,500 service award reasonable).

Turning to the seven factors set forth in *International Union, supra,* 497 F. 3d at 631, the Parties submit this settlement is a fair and equitable resolution of this FLSA collective action as follows:

### 1.    There Was No Fraud or Collusion Between the Parties.

Courts in this Circuit have found that when plaintiffs in an FLSA collective class action are represented by experienced counsel, it supports a conclusion that there was no fraud or collusion, and that the settlement was the product of an arms' length transaction. *See e.g. Scobey v. GM, LLC*, 2021 U.S. Dist. LEXIS 207917, at *6-7 (E.D. Mich. October 28, 2021);

*Walker v. Ryan Transp., Inc.*, 2021 U.S. Dist. LEXIS 111688 (E.D. Mich. June 15, 2021). Here, each party was independently represented by counsel who possessed extensive experience in litigating claims under the FLSA, including claims for unpaid overtime compensation. Plaintiffs were represented by LYTLE & BARSZCZ and Sedgwick was represented by WILSON TURNER KOSMO LLP and OGLETREE DEAKINS NASH SMOAK & STEWART, P.C. Counsel from these firms were obligated to, and did, vigorously represent their respective clients' interests throughout the pendency of this litigation and spent the past seven months engaging in protracted, detailed, and contentious negotiations to resolve this case. There was no fraud or collusion between the Parties.

## 2. The Complexity, Expense and Likely Duration of the Litigation Supports Settlement.

With respect to the second factor, courts have found that "employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming." *Doe v. Coliseum Bar & Grill, Inc.*, 2020 U.S. Dist. LEXIS 196306, * 3 (E.D. Mich. October 22, 2020). Both Parties continue to strongly disagree over the merits of the claims asserted by Plaintiffs, as well as Sedgwick's defenses, however, the Parties and their respective counsel agree that continued litigation would be extremely costly and time-consuming. The Parties further agree that if they continued to litigate this matter, they would be forced to engage in costly discovery and depositions across the country, as well as a lengthy trial that could stretch over a month or more, not including the damages phase. There is also no guarantee either Party would prevail at trial. The administrative exemption is an inherently subjective and fact-specific standard that makes any outcome uncertain. An appeal of any verdict favorable to Plaintiffs could further risk or delay receipt of any proceeds from the litigation. This settlement, therefore, is a reasonable means for both Parties to minimize future risks and litigation costs.

### 3. The Parties Conducted Detailed Investigations After a Voluminous Record Exchange.

Since this matter was filed, the Parties each conducted a thorough investigation and exchange of information to allow counsel and the Court to act intelligently in this matter. The Parties exchanged voluminous records in preparation for their two mediation sessions and engaged in a detailed analysis of these records to prepare robust exposure analyses for each of the Plaintiffs. This extensive investigation guided the Parties determination of the merits of Plaintiffs' claims and Sedgwick's defenses and allowed them to make an educated and informed conclusion thereon. Counsel for the Parties were also well positioned to evaluate the benefits of the Settlement by considering the risks and uncertainties of continued litigation, the time and expense that would be necessary to prosecute the Action through trial, any appeals that might be taken, and the likelihood of success. The information exchanged by the Parties and utilized in their negotiations and analysis include, but was not limited to: (i) the number of weeks a Plaintiff worked in a particular job during the relevant time period; (ii) the number of weeks worked by a Plaintiff during the relevant time period; (iii) when a Plaintiff opted into the lawsuit; (iv) the particular Plaintiff's rate of pay; (vi) the estimate of hours a Plaintiff worked in any given work week based upon Sedgwick's records; and, other factors related to the legal risks associated with continued litigation and trial. Such factors allowed the Parties to prepare detailed damage models that the Parties used to determine an agreeable settlement amount, as well as a fair and equitable distribution of the settlement amount for all the Plaintiffs.

### 4. The Parties' Likelihood of Success on the Merits Supports Settlement.

There was a risk that Plaintiffs would not be able to establish liability because of Sedgwick's available defenses. From Plaintiffs' perspective, there was a risk the Court/jury

4901-5136-4424, v. 2

would accept one or more of Sedgwick's key arguments and Plaintiffs' success on any of these aspects in motion practice – let alone at trial – was not guaranteed. An assessment of the administrative exemption at the heart of this matter involves both intense factual examination and the application of rather subjective criteria, including: (1) whether an employee's "primary duty" was office work "directly related to the management or general business operations of the employer or the employer's customers;" and (2) whether the "employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." As with most cases, the Parties saw the reasonableness of compromise since resolution of the ultimate issue would be unknowable prior to an expensive and uncertain trial.

In addition to the risks associated with exemption classification issues, the range of possible recovery by Plaintiffs is also open to dispute based on the proof of hours worked and method of calculating damages. Indeed, even if Plaintiffs were to succeed in demonstrating they were misclassified as exempt, which alone would require a substantial investment of time and resources, the exact amount of their recovery would remain uncertain given the disputed estimates of their overtime hours worked, as well as the applicable rate of pay for any unpaid wages. Beyond that, there always remained the risk that Sedgwick would prevail, and Plaintiffs would take nothing by way of their Complaint, which further supports the Parties' opinion that this settlement is fair and appropriate.

### 5. Plaintiffs' Counsel and the Representative Plaintiff Support Settlement.

Counsel in this action all have extensive experience litigating wage and hour cases, including class and collective actions. Similar issues regarding Sedgwick's classification of various positions as exempt were at issue in the matter of *Easterwood v. Sedgwick*, 6:19-cv-700-Orl-78LRH (M.D. Fla) and *Connie Gibbs v. Sedgwick, 2:21-cv-2153-SHM/cgc* (W.D. Tenn), which were handled by the same Plaintiffs' Counsel as in this action. Thus, Plaintiffs'

11

Counsel has been well informed over many years in both *Easterwood*, *Gibbs*, this case, and other litigated and non-litigated matters involving Sedgwick, of the issues and risks, along with what is fair and equitable for the Plaintiffs. Plaintiffs' Counsel and Schmitt find this settlement to be fair and equitable to all the Plaintiffs, given the risks and uncertainty of continued litigation.

### 6. No Absent Class Members.

As to the sixth factor, there are no absent class members because this is an FLSA opt-in collective action. To become a Plaintiff in this case, each Plaintiff had to complete and return an individual Consent to Sue and Opt-In Form pursuant to which they agreed and consented to being Plaintiffs in this FLSA case and agreed to be bound by any judgment by the Court or any settlement of this action. Their individual Consent to Sue and Opt-In forms also designated the law firm of Lytle & Barszcz to be their counsel in this action. As a result, any individual who did not return a Consent to Sue and Opt-In Form has not waived any claims they may still have due to the settlement in this case and, thus, are not prejudiced.

### 7. This Settlement Serves the Public Interest.

It is well-settled that "the law encourages the settlement of class actions." *Scobey*, 2021 U.S. Dist. 207917 at *9, *quoting Franks v. Kroger Co.*, 649 F. 2d 1216, 1224 (6th Cir. 1981). The public interest is clearly served as it implicitly serves the purpose and intent of Congress in enacting the FLSA which was "…to raise substandard wages and to give additional compensation for overtime work." *U.S. v. Rosenwasser*, 323 U.S. 360, 361 (1945), *quoting* Sen. Rep. No. 884 (75th Conf., 1st Sess.). This settlement serves the public interest and upholds the purpose of the FLSA by ensuring employees working in the United States receive appropriate compensation for their efforts.

### IV.  PLAINTIFFS' COUNSEL SHOULD BE AWARDED THEIR NEGOTIATED ATTORNEYS' FEES AND COSTS.

The last element the Court should evaluate in determining fairness of the settlement is the reasonableness of the proposed attorneys' fees. Section 216(b) of the FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). An award of attorneys' fees to a prevailing plaintiff under section 216(b) of the FLSA is mandatory, but the amount of the award is within the discretion of the judge. *Fegley v. Higgins*, 19 F.3d 1126 1134 (6th Cir. 1994).

When assessing the reasonableness of a fee award, district courts in this Circuit engage in a two-part analysis. *See In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 760 (S.D. Ohio 2007). In the Sixth Circuit, district courts may award fees based on either the "percentage-of-the-fund" or "lodestar." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 761. This flexible approach allows the Court to account for the unique and varied circumstances present in each class action.

The "percentage approach is 'the most appropriate method for determining reasonable attorneys' fees' in wage and hour cases." *Hebert v. Chesapeake Operating, Inc.*, 2019 U.S. Dist. LEXIS 160792, *11 (S.D. Ohio Sept. 20, 2019), *quoting Swigart v. Fifth Third Bank*, 2014 U.S. Dist. LEXIS 94450, *14-15 (S.D. Ohio July 11, 2014)). "Absent compelling reasons to the contrary," courts apply the percentage method in wage and hour cases, "as it best reflects FLSA's employee-protection objective." *Dewald v. Time Warner Cable Inc.*, 2021 U.S. Dist. LEXIS 32459, *16 (S.D. Ohio Feb. 16, 2021).

"[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class..." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 762. "While the lodestar approach incentivizes attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage approach instead 'rewards

counsel for success and penalizes it for failure.'" *Id*. As such, absent compelling reasons to the contrary, the percentage method is "preferred." *Arp v. Hohla & Wyss Ents*., LLP, 2020 U.S. Dist. LEXIS 207512, *16 (S.D. Ohio Nov. 5, 2020); *Wise v. Popoff*, 835 F. Supp. 977, 980 (E.D. Mich. March 25, 1993) ("[F]ee awards in common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created."); *Hebert*, 2019 U.S. Dist. LEXIS 160792, *21-22 (S.D. Ohio Sept. 20, 2019) (stating "33% is typical for attorney's fees in common fund, FLSA collective actions in this District..."); *see also Brandenburg v. Cousin Vinny's Pizza, LLC*, 2019 U.S. Dist. LEXIS 204371 (S.D. Ohio Nov. 25, 2019); *Estate of McConnell v. EUBA Corp.*, 2021 U.S. Dist. LEXIS 92836, *20-21 (S.D. Ohio May 17, 2021); *Arp*, LLP, 2020 U.S. Dist. LEXIS 207512 at *22; *Osman v. Grube, Inc.,* 2018 U.S. Dist. LEXIS 78222, *6 (N.D. Ohio May 4, 2018); *Thorn v. Bob Evans Farm*, 2016 U.S. Dist. LEXIS 195207, *7 (SD. Ohio Feb. 26, 2016) (awarding 32.92% of common fund); *O'Neil v. Pipeline*, 2021 U.S. Dist. LEXIS 225409 (S.D. Ohio Nov. 2, 2021)(fees of one third of the total settlement award are reasonable); *Myres v. Hopebridge, LLC.*, 2023 U.S. Dist. LEXIS 41294 (S.D. Ohio Feb. 21, 2023)($7,500 service award reasonable)(30% attorney fee reasonable).

There is also a benefit to the public considering that claimants with smaller claims may pool their claims and resources. Attorneys who handle class action cases enable this to occur. *See Moore v. Aerotek, Inc*., 2017 U.S. Dist. LEXIS 102621, *26 (S.D. Ohio June 30, 2017) (citation omitted). The societal benefit is particularly acute in wage-and-hour cases brought on behalf of workers, and in order for attorneys to handle these complex wage and hour cases, society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own. *Id*. (citation omitted); *Myres,* 2023 U.S. Dist. LEXIS 41294, *15-17.

In this case, Plaintiffs' Counsel litigated this matter on a wholly contingent basis with no guarantee of recovery. While the two mediation sessions occurred early in the litigation, Plaintiffs' Counsel worked for eight solid months concentrating all their efforts on exchanging documents, analyzing documents relating to all class members pay, hours logged into and out of Sedgwick's computer systems, weeks at issue and other factors pertaining to the risks of litigation. Negotiations spanned over this same time period which included informal negotiations and two mediations. Plaintiffs' Counsel's fee is less than 25% of the total fund which is considered reasonable by the court's in this Circuit.

Finally, Plaintiffs and Sedgwick are represented by experienced counsel, who are highly qualified and have substantial experience in federal courts and FLSA collective action litigation. Counsels' professional skill and standing support approving the fee. For these reasons, the Court should determine that the requested fees and costs are reasonable and approve the negotiated fees and costs of One Hundred and Twenty-Five Thousand Dollars ($125,000.00).

## CONCLUSION

The Parties' FLSA settlement is fair, reasonable and adequate. Accordingly:

1.   The Parties request that, upon finding that the Settlement is fair and reasonable, the Court issue an Order dismissing the case *without prejudice* while retaining jurisdiction for entry of a final order of dismissal, *with prejudice* following completion of the notice, release, and payment provisions of the Settlement;

2.   Upon completion of the notice, release, and payment provisions of the Settlement, the Parties will file a Joint Motion for Dismissal, *with prejudice*, of the claims of Plaintiffs who have signed and timely returned Release of Claims forms. The Parties will submit a proposed order for dismissal *with prejudice* of those individuals, listing Plaintiffs that have released their claims.

3.      Finally, the Parties request that the Court retain jurisdiction for enforcement of the Settlement Agreement.

**WHEREFORE**, the Parties respectfully request this Court approve the Parties' FLSA Settlement in this case.

Respectfully submitted this 9th day of June, 2025.

| | |
|---|---|
| LYTLE & BARSZCZ, P.A. | WILSON TURNER KOSMO LLP |
| 533 Versailles Drive, Suite 100 | 402 West Broadway, Suite 1600 |
| Maitland, FL 32751 | San Diego, CA 92101 |
| Telephone: (407) 622-6544 | Telephone: (619) 236-9600 |
| Facsimile: (407) 622-6545 | Facsimile: (619) 236-9669 |
| | |
| By:  *s/Mary E. Lytle* | By:  *s/Mary P. Snyder* |
| Mary E. Lytle, Esq. | Mary P. Snyder, Esq. |
| Florida Bar No. 0007950 | California Bar No. 211228 |
| mlytle@lblaw.attorney | msnyder@wilsonturnerkosmo.com |
| | |
| David V. Barszcz, Esq. | Leticia C. Stevens, Esq. |
| Florida Bar No. 750581 | California Bar No. 253345 |
| dbarszcz@lblaw.attorney | lstevens@wilsonturnerkosmo.com |
| | |
| ***Attorneys for Plaintiffs*** | Geoffrey D. La Val, Esq. |
| | California Bar No. 279987 |
| | glaval@wilsonturnerkosmo.com |

OGLETREE DEAKINS NASH
SMOAK & STEWART, P.C.
6410 Poplar Avenue, Suite 300
Memphis, TN 38119
Tel: (901) 767-6160
Fax: (901) 767-7411

By:     *s/Thomas L. Henderson*
        Thomas L. Henderson, Esq.
        Tennessee Bar No. 01152-mail:
        Thomas.henderson@ogletreedeakins.com

        ***Attorneys for Defendant***
        Sedgwick Claims Management Services, Inc.

16

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 9, 2025, I electronically filed the foregoing with the Clerk of the court using the ECF filing system which sent notification of such filing to the following counsel of record:

Mary E. Lytle
David V. Barszcz
Lytle & Barszcz, P.A.
533 Versailles Drive, Suite 100
Maitland, FL 32751
Tel: (407) 622-6544
Fax: (407) 622-6545
E-mail: mlytle@lblaw.attorney
E-mail: dbarszcz@lblaw.attorney

/s/ *Mary P. Snyder*
Mary P. Snyder, Esq. (*admitted pro hac vice*)