**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| DONNA SCHMITT, on behalf of herself and others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 2:24-cv-2188-SHL-tmp |
| SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., a Foreign for Profit Corporation, | ) ) ) ) | |
| Defendant. | ) | |

**ORDER GRANTING JOINT MOTION FOR APPROVAL OF FAIR LABOR
STANDARDS ACT COLLECTIVE ACTION SETTLEMENT**

The parties jointly request Court approval of their collective action settlement under the Fair Labor Standards Act.  (ECF No. 60.)  The Court held a hearing on the motion on July 2, 2025.  (ECF No. 62.)  Because the settlement reflects a fair and reasonable resolution of a bona fide FLSA dispute, the joint motion is **GRANTED**.

## BACKGROUND

On March 22, 2024, Plaintiff Donna Schmitt filed suit against Defendant Sedgwick Claims Management Services, Inc. on behalf of herself and other similarly situated employees for recovery of unpaid overtime compensation under the FLSA.  (ECF No. 1.)  Schmitt has worked for Sedgwick as a Performance Assurance Analyst (PAA) since 2008.  (Id. at ¶ 10.)  As a PAA, she reviews disability claims to ensure compliance with Sedgwick's policies and procedures, and she reports her findings to her supervisors.  (Id. at ¶¶ 13, 19.)  Schmitt alleges that Sedgwick misclassified PAAs like her as exempt from overtime, refused to pay them time and a half for work in excess of forty hours per week, and failed to keep records required by the

FLSA.  (Id. at ¶ 23.)  Sedgwick disputes Schmitt's allegations, asserting that its PAAs were

employed in an administrative capacity and were therefore properly classified as exempt

employees and fully compensated for all of the hours they worked.  (ECF No. 60 at PageID 197.)

Schmitt amended her complaint on November 6, 2024, to clarify that the putative class

was limited to PAAs who worked for Sedgwick during the time period from May 1, 2021

through May 1, 2024.[1]  (ECF No. 35 at ¶ 14.)  The parties jointly moved for Court-authorized

notice to the putative class, and the Court approved the proposed notice forms and established

various notice procedures on November 8, 2024.  (ECF No. 36.)  Notice was sent to all one

hundred and ten people in the putative class, and fifteen Opt-In Plaintiffs joined Schmitt's action.

(ECF Nos. 2, 14, 15, 17, 39–49, 52.)

The parties mediated the case on October 14, 2024.  (ECF No. 60 at PageID 194.)

Although their discussions were productive, they were not successful.  (Id.)  Nevertheless, the

parties engaged in a second mediation on April 30, 2025, and settled Schmitt's and the Opt-In

Plaintiffs' claims.  (Id.)  The settlement does not resolve the claims of any other putative class

member, and any individual who chose not to opt into this action has not waived any claims they

may still have.  (Id. at PageID 203.)  Sedgwick agreed to pay Schmitt and the Opt-In Plaintiffs a

total of $500,000 to release their claims.  (Id. at PageID 194.)   Of the total settlement amount,

$367,500 will be distributed to Schmitt and the Opt-In Plaintiffs for back wages and liquidated

damages, $7,500 will be distributed to Schmitt as a service award for representing the collective,

and $125,000 will be distributed to Lytle & Barszcz for attorneys' fees.  (Id.)  The parties agree

that this is a fair and reasonable settlement of a bona fide dispute.  (Id. at PageID 196.)

---

[1] Sedgwick implemented changes to their overtime compensation policies in May 2024.

Once this Order is entered, Plaintiffs' counsel will mail or email a personalized

settlement package to Schmitt and each Opt-In Plaintiff containing the Notice of Settlement

Form, the Release of Claims form, and a postage-paid, pre-addressed return envelope to send

back the signed release.  (Id. at PageID 195.)  Schmitt and the Opt-In Plaintiffs must complete

and return the executed release within forty days after the date it was mailed to them.  (Id.)  If

someone fails to execute and return the release, that person will not receive a settlement payment

and none of their claims against Sedgwick will be released.  (Id.)  Sedgwick retains the right to

nullify the settlement if Schmitt fails to timely return an executed release or if Opt-In Plaintiffs

representing fifty percent or more of the net payment amount fail to do so.  (Id.)  Once all the

conditions for settlement are met, the parties will file a joint motion for dismissal with prejudice

outlining their compliance with these post-approval terms.  (Id. at PageID 196.)

## APPLICABLE LAW

Congress enacted the FLSA to protect employees "who sacrifice a full measure of their

freedom and talents to the use and profit of others."  Tenn. Coal, Iron & R. Co. v. Muscoda Loc.

No. 123, 321 U.S. 590, 597 (1944).  An employer who engages in certain prohibited practices,

like failing to pay overtime, is liable to a covered employee for back wages and liquidated

damages.  See 29 U.S.C. § 216(b).  Because of the unequal bargaining power between the

parties, they can only settle a claim for back wages if (1) the Secretary of Labor supervises the

payment of back wages or (2) the district court approves the proposed settlement agreement.

Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dep't of Labor, 679 F.2d 1350, 1352–53 (11th Cir.

1982).  Here, the parties have taken the second route.  (ECF No. 60.)

A district court must scrutinize a proposed FLSA settlement to determine whether it is a

"fair and reasonable resolution of a bona fide dispute over FLSA provisions."  Nutting v.

3

Unilever Mfg. (U.S.) Inc., No. 2:14-cv-02239, 2014 WL 2959481, at *3 (W.D. Tenn. June 13, 2014) (quoting Lynn's Food, 679 F.2d at 1355).  The court looks to both the process of achieving the settlement and its substance.  See Lynn's Food, 679 F.2d at 1354.  A fair and reasonable process is one in which the plaintiff is protected by attorneys who preserved her rights in an adversarial context.  Id.  To determine whether the substance of the compromise is fair and reasonable, the court looks to:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel.

Nutting, 2014 WL 2959481, at *3 (quoting Dees v. Hydradry, Inc., 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010)).

## ANALYSIS

Based on a review of the joint motion and proposed Settlement Agreement and Release, the Court finds that the proposed agreement is a fair and reasonable resolution of a bona fide FLSA dispute.  During the settlement negotiation process, the parties engaged the assistance of a well-respected mediator (ECF No. 60 at PageID 194), were protected by attorneys who preserved their rights (id. at PageID 197–200), and settled the claims in an adversarial context, as evidenced by the pleadings filed by experienced wage-and-hour counsel and the length of time it took to resolve the disputes (id.).  Indeed, the parties still disagree over the merits of the FLSA claims.  (Id. at PageID 197–198.)

The proposed agreement also represents a fair and reasonable compromise of the disputed issues.  After deducting attorney's fees and costs, the net recovery is $375,000.  (Id. at PageID 194.)  Because the claims are based on the compensability of undocumented overtime hours, Schmitt and the Opt-In Plaintiffs had to estimate the number of hours they worked based on their

4

own memories and inferences drawn from the electronic activity logs for Sedgwick's email and

computer systems.  (Id. at PageID 197.)  The parties spent many hours pouring over Sedgwick's

data to estimate each Plaintiff's total working hours day by day and week by week during the

relevant period.  (Id.)  While Plaintiffs' estimates asserted that they were working substantial

overtime hours, Sedgwick's estimates were much lower and often showed that Plaintiffs were

working less than forty hours per week.  (Id.)  Thus, not only do the parties dispute whether the

PAAs were properly classified as exempt, but they also dispute the amount of their theoretical

recovery.  (Id. at PageID 197–98.)  But both parties agree that the net recovery is a reasonable

and fair payment for a release of the FLSA claims given the significant factual disputes in the

case and the uncertainty associated with proceeding to trial.  (Id.)

Plaintiffs' counsel developed a formula to calculate an equitable pro-rata distribution of

the settlement proceeds amongst the Plaintiffs.  (Id. at PageID 198–99.)  The formula accounted

for (1) the number of weeks each Plaintiff worked as a PAA during the relevant period, (2) the

limitations period for each Plaintiff based on when they opted into the action, (3) each Plaintiffs'

rate of pay, (4) the estimated hours each Plaintiff worked in any given work week based on their

memories and the available computer data, (5) whether each Plaintiff has already been

compensated for some of the relevant time in a separate lawsuit or prior settlement, and (6) the

legal risks associated with going to trial.[2]  (Id.)  The payment amounts to each Plaintiff range in

value from $4,161.65 to $46,155.58.  (Id. at PageID 199.)  Schmitt will also receive an additional

service award of $7,500 for her involvement in this litigation, including her assistance in

analyzing the computer data, working with counsel on discovery issues, and participating in

---

[2] At the hearing, the parties clarified that the risk factor is not based on a specific mathematical
formula for each individual Plaintiff.  Instead, it affected the overall decision to settle the matter
and did not result in different Plaintiffs receiving different settlement amounts.

mediation.  (Id.)  See O'Neil v. Miller Pipeline, LLC, No. 2:20-cv-4034, 2021 WL 5376235, at

*2 (S.D. Ohio Nov. 2, 2021) (finding a $7,500 service award reasonable); Myres v. Hopebridge,

LLC, No. 2:20-cv-5390, 2023 WL 2399056, at *5–6 (S.D. Ohio Feb. 21, 2023) (finding a $7,500

service award reasonable).

The Court also finds no evidence of fraud or collusion.  (ECF No. 60 at PageID 199–

200.)  See Nutting, 2014 WL 2959481, at *3.  Each party was independently represented by

experienced counsel who vigorously represented their clients' respective interests.  (ECF No. 60

at PageID 200.)  Moreover, the parties exchanged discovery and conducted detailed

investigations into the data provided.  (Id. at PageID 201.)  Settlement now will avoid additional

expenditures of time and resources.  See Nutting, 2014 WL 2959481, at *3.  The range of

possible recovery is relatively fixed and defined by statute, so there is little risk that the proposed

settlement will deprive Schmitt and Opt-In Plaintiffs of a fair result.  See 29 U.S.C. § 216(b).

Finally, counsel for both parties indicate their support for the proposed settlement through the

filing of their joint motion.  (ECF No. 60.)  Thus, the proposed settlement is fair and reasonable.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the parties' joint motion and

**APPROVES** the proposed Settlement Agreement and Release attached to their motion.

Plaintiffs' counsel is **DIRECTED** to send the Notice of Settlement Form, the Release of Claims

form, and a postage-paid, pre-addressed return envelope to Schmitt and each Opt-In Plaintiff.

When the terms of the settlement are fulfilled, the parties are **DIRECTED** to file a joint motion

to dismiss this action.

**IT IS SO ORDERED**, this 14th day of July, 2025.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE